**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Andres Efrain Cedeno Carreno,<br><br>Petitioner,<br><br>-v-<br><br>Pamela Bondi; Todd Lyons; Warden, Nassau County Correctional Center; Kristi Noem;<br><br>Respondents. | 2:26-cv-1180<br>(NJC) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On March 1, 2026, Andres Efrain Cedeno Carreno filed this Petition seeking a writ of habeas corpus under 28 U.S.C. § 2241 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Petition for Writ of Habeas Corpus, ECF No. 1.) The Petition argues that ICE's detention of Mr. Cedeno Carreno, which began on February 27, 2026, without a bond hearing or any individualized custody determination violates the Fifth Amendment to the U.S. Constitution and 8 U.S.C. § 1226(a) ("Section 1226(a)").[1] The Petition seeks the following relief: (1) a writ of habeas corpus requiring Respondents to provide Mr.

[1] Although the Petition does not explicitly cite the Due Process Clause of the Fifth Amendment, Respondents' opposition brief acknowledges that the Petition brings a due process claim (Response to Order to Show Cause, ECF No. 6 at 1), and Petitioner argues on reply that his constitutional rights were violated. (Ltr. Reply, ECF No. 8 at 1 ("This case, however, presents a structural due process challenge to the manner and timing of Petitioner's arrest and detention—not merely a disagreement with an ongoing custody determination.").) Petitioner's counsel confirmed on the record at the March 2, 2026 hearing that the Petition brings a Fifth Amendment due process claim. (Hr'g Tr. 4:11–14.)

Cedeno Carreno with an individualized bond hearing before an immigration judge; or (2) the immediate release of Mr. Cedeno Carreno from ICE custody.

Respondents are government officials: Todd Blanche, the United States Attorney General; Markwayne Mullin, the Secretary of the Department of Homeland Security ("DHS"); Todd M. Lyons, the Acting Director of ICE; and the Warden of the Nassau County Correctional Center.[2] They argue that Mr. Cedeno Carreno was detained under Section 1226(a), which vests the Attorney General and DHS with "broad discretionary authority to detain" noncitizens during removal proceedings. (Response to Order to Show Cause ("Resp."), ECF No. 6 at 2 (citing (8 U.S.C. § 1226(a)(1)).) Respondents seek dismissal of the Petition for failure to exhaust available administrative remedies because Mr. Cedeno Carreno did not seeking a custody redetermination proceeding in front of an immigration judge before seeking habeas relief. (Resp. at 3.)

On March 3, 2026, this Court held a show cause hearing on the Petition, heard witness testimony, and granted the Petition in part for the reasons explained on the record, and noted that the Court's reasoning would be set forth in more detail in a forthcoming order. This Memorandum and Order provides the Court's full analysis supporting the conclusion that ICE detained Mr. Cedeno Carreno in violation of his due process rights.

First, as a threshold matter, Mr. Cedeno Carreno is excused from any requirement to exhaust administrative remedies both because a bond hearing before an immigration judge cannot provide him relief from detention without a pre-deprivation opportunity to be heard and because his due process claim raises a significant constitutional question and triggers a finding of

[2] The Petition names Pam Bondi, the former United States Attorney General, and Kristi Noem, the former Secretary of the Department of Homeland Security, as Respondents. Pursuant to Fed. R. Civ. P. 25(d), Blanche is automatically substituted for Bondi and Mullin is automatically substituted for Noem as Respondents in this action.

irreparable harm. Second, ICE officers arrested and detained Mr. Cedeno Carreno under Section 1226(a) pursuant to a Form I-200 warrant that was issued *before* the commencement of removal proceedings against him—a clear violation of the regulations implementing Section 1226(a). Third, no DHS or ICE officer conducted an individualized custody determination of Mr. Cedeno Carreno *before* arresting him. Thus, for the reasons explained below, under the balancing test set forth in *Mathews v. Eldrige*, 424 U.S. 319, 321 (1976), Mr. Cedeno Carreno's detention was unlawful from its inception and a violation his Fifth Amendment right to procedural due process.

**FACTUAL FINDINGS**

Mr. Cedeno Carreno, an Ecuadorian national, was admitted to the United States as a B2 Non-Immigrant visitor on June 20, 2024. (Decl. of Jamie Rodriguez ("J. Rodriguez Decl."), ECF No. 9 ¶ 3.) His visa authorized him to remain in the United States until December 19, 2024. (*Id.*)

On the morning of February 27, 2026, one or more unnamed ICE officers working as part of a team led by Deportation Officer Jamie Rodriguez ran a license plate check on a vehicle stationed in a Target parking lot in Suffolk County, New York, and learned that Mr. Cedeno Carreno held title to the vehicle. (Pet. at 9; Mar. 3 Hr'g Tr. ("Hr'g Tr."), ECF No. 11 at 30:2–3.) ICE officers ran a records check on Mr. Cedeno Carreno, which revealed that he was in the United States without lawful status. (Hr'g Tr. 19:16–18; J. Rodriguez Decl. ¶ 4.) The ICE officers at the scene made a request to Patrick Heery, an Acting Supervisory Detention Officer not present in the parking lot, to issue a Form I-200 Warrant for the arrest of Mr. Cedeno Carreno. (J. Rodriguez Decl. ¶ 4; Hr'g Tr. 19:16–19.) At 10:29 a.m., Heery issued the warrant. (J. Rodriguez Decl. ¶ 4; Warrant for Alien Arrest ("Form I-200"), *id*. Ex. 1 at ECF No. 9-1.)

Thereafter, ICE Deportation Officer Jamie Rodriguez ("J. Rodriguez") observed the vehicle at issue until a person, later discovered to be Mr. Cedeno Carreno, arrived and sat in the

driver's seat. (J. Rodriguez Decl. ¶ 5.) Once Mr. Cedeno Carreno was in the vehicle, Rodriguez and other ICE officers approached the vehicle, identified themselves, and asked Mr. Cedeno Carreno for identification. (*Id.*) He provided the officers with his Ecuadorian passport and New York State driver's license. (*Id.*) Rodriguez and the other ICE officers executed the warrant and placed Mr. Cedeno Carreno under arrest at approximately 10:50 a.m. (*Id.* ¶¶ 4–5.)

The ICE officers transported Mr. Cedeno Carreno to an ICE intake center located at the Nassau County Correctional Center. (J. Rodriguez Decl. ¶ 6; Hr'g Tr. 24:3–8.) ICE Supervisory Detention and Deportation Officer Jason Langlois testified that, at the time of Mr. Cedeno Carreno's arrest, there were no pending removal proceedings against him; rather, "[a]fter he was arrested, [the Notice to Appear] was signed" by Officer Langlois. (Hr'g Tr. 24:9–14; Notice to Appear, Rodriguez Decl. Ex. 2, ECF No. 9-1 at 4.) The Notice to Appear was served on the Immigration Court's detained docket later that same day, thereby commencing removal proceedings against Mr. Cedeno Carreno after he had already been arrested. (J. Rodriguez Decl. ¶ 7.) According to Officer Langlois, based on his training and experience, "generally, the notice to appear is served after [a detainee's] arrest." (Hr'g Tr. 24:19–21.)

At the ICE intake center, Brendan Rodriguez ("B. Rodriguez"), an officer on ICE's Long Island Fugitive Operations team, questioned Mr. Cedeno Carreno about his family, community ties, and immigration status for about 30 minutes. (Hr'g Tr. 34:4–16.) After questioning and reviewing immigration records, B. Rodriguez determined that Mr. Cedeno Carreno posed a flight risk because of his lack of community and family ties to the area and recommended detention. (*Id.* 32:17–33:11; *id.* 34:11–13.) ICE completed this custody determination at 2:52 p.m.—more than four hours after Mr. Cedeno Carreno's arrest. (J. Rodriguez Decl. ¶ 6.) Langlois signed a Notice of Custody Determination form, which was issued to Mr. Cedeno Carreno and read to

him in Spanish. (J. Rodriguez Decl. ¶ 6; Notice of Custody Determination, *id*. Ex. 3 at ECF No. 9-1 at 8.)

## LEGAL STANDARD

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Hechavarria v. Sessions*, 891 F.3d 49, 53 (2d Cir. 2018).[3] Federal courts have jurisdiction to resolve habeas claims by noncitizens challenging the constitutionality of their detention. *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Hechavarria*, 891 F.3d at 53. Additionally, "[c]laims that the discretionary process [used to detain someone] . . . was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Velasco Lopez*, 978 F.3d at 850.

## DISCUSSION

### I. Exhaustion

Respondents argue that the Petition should be dismissed because Mr. Cedeno Carreno has purportedly failed to exhaust administrative remedies that were available to him, including an appeal from an initial custody determination by DHS/ICE to a bond hearing before an immigration judge and a subsequent review of any immigration judge decision by the Board of Immigration Appeals. (Resp. at 3 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1)).) Respondents acknowledge that a district court may excuse a petitioner's failure to exhaust

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets, alterations, and citations.

administrative remedies under certain circumstances, such as (1) when available administrative remedies do not provide a genuine opportunity for adequate relief, (2) when there is risk of irreparable injury absent immediate judicial relief, (3) when an administrative appeal would be futile, or (4) when a petition raises a constitutional question. (*Id*. at 3 (citing *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) *as amended* (July 24, 2003) (Sotomayor, J.).) They contend that none of these exceptions apply because: (1) Mr. Cedeno Carreno may appeal ICE's initial determination that he should be detained to an immigration judge and then may appeal any redetermination ruling to the BIA, which would provide adequate relief; (2) Mr. Cedeno Carreno cannot show irreparable harm because he was detained for only a few days; (3) a bond hearing before an immigration judge would not be futile, and (4) the existence of a constitutional question does not automatically excuse the exhaustion requirement. (*Id*.)

Mr. Cedeno Carreno argues that exhaustion is premature because additional factual development is necessary to assess whether his arrest and detention were carried out in a constitutionally sufficient manner. (Reply at 1.) He maintains that the "constitutionality of a deprivation of liberty does not turn on its length" because "the injury occurs at the moment of detention." (*Id*. at 2.) Finally, Mr. Cedeno Carreno further argues that administrative remedies would not provide him adequate relief because he does not challenge the outcome of his custody determination but the process by which detention was imposed—one that failed to provide him an opportunity to be heard. (*Id*.)

The Second Circuit has held that habeas petitioners seeking release from immigration detention are "subject . . . to a less stringent judicial exhaustion requirement" and are not subject to any statutory requirement to exhaust administrative remedies. *Beharry*, 329 F.3d at 62. *See also J.U. v. Maldonado*, 805 F. Supp. 3d 482, 489 (E.D.N.Y. 2025) ("Courts generally require

'administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus.'" (quoting *Quintanilla v. Decker*, 21-cv-417, 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021))). Nonetheless, administrative exhaustion may not be required when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry*, 329 F.3d at 62.

Here, administrative exhaustion is not required for several reasons. First, a bond hearing before an immigration judge cannot provide Mr. Cedeno Carreno the requested relief because he is not challenging the *outcome* of the initial custody determination, but rather the fact that ICE detained him without first providing an opportunity to be heard through an initial custody determination. As another district court has recognized, a custody redetermination hearing before an immigration judge "is no substitute for the requirement that ICE engage in a deliberative process *prior to, or contemporaneous with*, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause . . . ." *Chipantiza-Sisalema v. Francis*, No. 25-cv-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (emphasis added). As a result, administrative remedies would not provide Mr. Cedeno Carreno with adequate relief and would therefore be futile.

Second, Respondents' contention that Mr. Cedeno Carreno did not experience irreparable harm because he had been detained for only three days when his Petition was filed is irrelevant to the exhaustion analysis. Mr. Cedeno Carreno does not claim that his detention was unlawfully prolonged. Rather, he claims that ICE's arrest and detention of him was unlawful because it was carried out without "constitutionally sufficient pre-deprivation safeguards" in the form of an

individualized determination as to whether he presents a risk of flight or danger, thereby depriving him of an opportunity to be heard on these issues whether before or contemporaneous with the arrest. (*See* Reply, ECF No. 8 at 1–2.) This alleged procedural due process violation "triggers a finding of irreparable injury" that excuses the exhaustion requirement. *Connecticut Dep't of Env't. Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004); *Basank v. Decker*, 613 F. Supp. 3d 776, 788 (S.D.N.Y. 2020) ("In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm.") (collecting cases); *see also Veletanga v. Noemi*, No. 25-cv-9211, 2025 WL 3751865, at *4 (S.D.N.Y. Dec. 26, 2025) (finding that courts have "easily found irreparable harm" where a petitioner is being wrongfully detained).

Moreover, the Petition raises a significant constitutional question relating to Mr. Cedeno Carreno's procedural due process rights, which provides a further basis for excusing the exhaustion requirement here. *See Beharry*, 329 F.3d at 62. Accordingly, Mr. Cedeno Carreno was not required to exhaust any administrative remedies prior to bringing the procedural due process claims set forth in the Petition.

## II. Procedural Due Process

The Due Process Clause of the Fifth Amendment provides that "[n]o person . . . shall be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Second Circuit has recognized that "the Fifth Amendment entitles noncitizens to due process of law . . . whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at 850. Moreover, "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.*

To satisfy due process, the procedures afforded must be "appropriate to the nature of the case *before* the termination of a [constitutionally protected interest] becomes effective." *Bell v.*

*Burson*, 402 U.S. 535, 542 (1971) (cleaned up) (emphasis added). Respondents invoke 8 U.S.C. § 1226(a) as the basis for ICE's detention of Mr. Cedeno Carreno. (Resp. at 1.) Section 1226(a) provides that the Attorney General—or his designated officers—may "detain" or "release" a noncitizen, pending a decision on whether the noncitizen is to be removed from the United States. 8 U.S.C. § 1226(a). "This language undoubtedly vests broad authority to arrest and detain . . . but due process must account for the wide discretion . . . to arrest *any* person in the United States suspected of being removable." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 474, 492 (S.D.N.Y. Aug. 12, 2025) (quotations omitted).

Courts apply the *Mathews v. Eldridge* balancing test "when determining the adequacy of process in the context of civil immigration confinement." *Munoz Materano v. Artera*, 804 F. Supp. 3d 395, 416 (S.D.N.Y. Sept. 12, 2025). Under this test, a court must consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that any additional or substitute procedures would entail. *Mathews v. Eldrige*, 424 U.S. 319, 321 (1976).

Applying this balancing test to the record here, Respondents' detention of Mr. Cedeno Carreno violated his Fifth Amendment rights to procedural due process. The first *Mathews* factor weighs heavily in favor of Mr. Cedeno Carreno because ICE's detention of him without any pending removal proceedings as required by Section 1226(a) and without any pre-deprivation notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. Considering the second factor, the procedures used by ICE give rise to an extraordinarily significant risk of erroneous deprivation of Mr. Cedeno Carreno's liberty because they run afoul of both the plain

text of Section 1226(a) and its implementing regulations. Not only did ICE arrest and detain Mr. Cedeno Carreno before *any* removal proceedings against him were initiated—a plain violation of Section 1226(a)—ICE also failed to conduct the required a custody determination until more than four hours *after* officers had already arrested and detained him. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less identify any government interests advanced by ICE's detention of Mr. Cedeno Carreno *before* the initiation of removal proceedings and without any individualized inquiry into whether he presents a flight risk or danger to the public or property.

**A. Arrest Without Pending Removal Proceedings**

There is no dispute that ICE's detention of Mr. Cedeno Carreno is governed by Section 1226(a). (*See* Resp. at 1 (invoking 8 U.S.C. § 1226(a)); Reply at 2 (arguing that Mr. Cedeno Carreno should have been given an initial custody determination before detention pursuant to Section 1226(a)).) Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained *pending a decision on whether the alien is to be removed* from the United States." 8 U.S.C. § 1226(a). The Supreme Court has recognized that Section 1226(a) thus governs the detention of noncitizens "already in the country *pending the outcome of removal proceedings*." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added). In line with this understanding, 8 C.F.R. § 236.1(b)(1), the regulation implementing Section 1226(a), provides that "*[a]t the time of issuance of the notice to appear, or at any time thereafter* and up to the time removal proceedings are completed, the respondent *may be arrested and taken into custody* under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1) (emphasis added). Thus, Section 1226(a) and its implementing regulation plainly contemplate that removal proceedings are "pending" at the time of any arrest and detention under these

authorities. Accordingly, a Notice to Appear for removal proceedings in immigration court must have been issued *before* or, at a minimum, at the time a noncitizen is arrested and detained pursuant to a Form I-200 Warrant for Arrest.

Indeed, a Notice to Appear must be filed with the EOIR to initiate removal proceedings. *Ozturk v. Hyde*, 136 F.4th 382, 398 (2d Cir. 2025) ("Filing a Notice to Appear ('NTA') in an immigration court is the action that commences removal proceedings.") (citing 8 U.S.C. § 1229(a); 8 C.F.R. § 1239.1)). When a Notice to Appear has *not* even been *issued* by ICE—much less filed with EOIR, as required to actually commence removal proceedings—no removal proceedings have been initiated and there is no basis to arrest and detain a noncitizen under Section 1226(a), which according to its plain text, *only* permits such arrest and detention "*pending a decision* on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

Courts around the country read Section 1226(a) and 8 C.F.R. § 236.1(b)(1) this way. *See, e.g., Parada Cruz v. Mullin*, 837 F. Supp. 3d 404, 409 (E.D.N.Y. Apr. 16, 2026) ("If ICE is going to use an arrest warrant, then there must be removal proceedings initiated *before or at the time of* the arrest. Such proceedings are begun through the issuance of a Notice to Appear ('NTA'). There is no 'leeway.' If ICE wants to use a warrant, it must have a valid NTA in place."); *Yeleshev v. Larocco*, No. 26-cv-2294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) ("In other words, an I-200 cannot be used to effectuate an arrest *before* an NTA has been issued."); *Aparicio v. Genalo*, No. 26-cv-1411, 2026 WL 698872, at *5 (E.D.N.Y. Mar. 12, 2026) ("[T]he regulations require that removal proceedings are pending or at least that a Notice to Appear was served at the time of arrest."); *Gopie v. Lyons*, No. 25-cv-5229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) ("The [Notice to Appear] begins the removal process,

and *at that time or after its issuance*, the Government can then effectuate his arrest, and, if necessary, detention, until removal proceedings are completed." (emphasis added)); *Maldonado v. Bostock*, No. 2:23-cv-760, 2023 WL 5804021, at *3 (W.D. Wash. Aug. 8, 2023) (similar); *Cancino Castellar v. McAleenan*, 388 F. Supp. 3d 1218, 1224 (S.D. Cal. 2019) ("DHS regulations authorize an immigration officer to formally arrest and take the alien into custody pursuant to a Form I-200 Warrant of Arrest *at the time* [a Notice to Appear] is issued." (emphasis added)).

Indeed, courts around the country have rejected the notion that ICE may first arrest and detain a noncitizen and only afterwards issue a Notice to Appear for removal proceedings, holding that such conduct flouts the plain text of Section 1226(a) and 8 C.F.R. § 236.1(b)(1). One district court explained:

> Section 236.1(b) states that certain immigration officers have authority to issue and serve a Form I-200 arrest warrant at the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed. *That does not mean that DHS may trigger Section 1226(a) at any time and in any circumstance . . . by issuing an arrest warrant*.

*Maldonado*, 2023 WL 5804021, at *3 (emphasis added)). Similarly, another district court rejected the notion that ICE may issue Form I-200 warrants immediately upon identifying a noncitizen unlawfully present in the United States when there is no pending Notice to Appear in immigration court. *See Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 861–62 (N.D. Ill. 2025)).

Here, DHS issued a Notice to Appear only *after* ICE arrested Mr. Cedeno Carreno. ICE Officer Langlois confirmed this sequence of events as follows:

> Court: And that notice to appear wasn't generated until after he was arrested and brought to the Nassau County Correctional Center?

> Langlois: The Nassau County intake, which is not the actual correctional center. But yes, you're correct. After he was arrested, it was signed.

(*See* Hr'g Tr. 24:9–14; Notice to Appear, Rodriguez Decl. Ex. 2, ECF No. 9-1 at 4.) Indeed, Langlois testified that ICE's standard practice is to issue a Notice of Appear only *after* arresting a noncitizen:

> Court: So the removal proceedings were initiated with the NTA after the arrest?
>
> Langlois: That's correct, your honor.
>
> Court: Why is that the case?
>
> Langlois: Based on our training and our past experiences, it's just how—generally, the notice to appear is served after the arrest.

(Hr'g Tr. 24:12–18).

Accordingly, ICE's arrest and detention of Mr. Cedeno Carreno pursuant to a Form I-200 warrant, before the initiation of removal proceedings, or even the issuance of a Notice to Appear, was unlawful at its inception. *See Gopie*, 2025 WL 3167130, at *1 (finding that ICE's arrest of a noncitizen pursuant to a Form I-200 warrant prior to the initiation of any removal proceedings or the issuance of a Notice to Appear is "a dispositive and independent basis" for granting a writ of habeas corpus); *Yeleshev*, 2026 WL 1353806, at *8 (same). Not only is such a procedure contrary to the plain text of Section 1226(a) and its implementing regulations, it also constitutes a due process violation. ICE's detention of Mr. Cedeno Carreno without the existence of *any* pending removal proceedings necessarily deprived him of his significant liberty interest in being free from detention. Additionally, ICE's procedures created a high risk of erroneous deprivation of liberty because, as noted, the sole purpose of discretionary detention under Section 1226(a) is to address any risk of flight or dangerousness "pending a decision" in removal proceedings, which here were nonexistent at the time Mr. Cedeno Carreno was detained. Finally, Respondents

have failed to identify any government interest advanced by detaining Mr. Cedeno Carreno before the initiation of removal proceedings when the purpose of Section 1226(a) is explicitly tied to the existence of such proceedings. (*See* Resp.) Accordingly, Respondents' detention of Mr. Cedeno Carreno under Section 1226(a) before even the issuance of an NTA commencing removal proceedings against him violated his procedural due process rights.

**B. Lack of Individualized Custody Determination**

Section 1226(a) permits the arrest and detention of a noncitizen pending ongoing removal proceedings. 8 U.S.C. § 1226(a). However, when ICE seeks to exercise its discretion to detain a noncitizen under Section 1226(a), the statute and its implementing regulations require ICE to first make an individualized custody determination.

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The statute specifies that, pending a removal decision, the Attorney General "*may* continue to detain the arrested alien" or "*may* release the alien on bond" or on "conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). As other district courts have recognized, "[t]he Supreme Court has interpreted similar 'may' language in other provisions of the INA to require the Attorney General to make 'some level of individualized determination.'" *Velesaca v. Decker*, 458 F. Supp. 3d 224, 235 (S.D.N.Y. 2020) (quoting *I.N.S. v. Nat'l Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 (1991)); *see also Hyppolite v. Noem*, 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) (characterizing Section 1226(a) as "a discretionary detention provision" requiring "an individualized bond determination before a noncitizen may be taken into custody"). Section 1226(a)'s implementing regulations also contemplate that a DHS officer will conduct an "*initial* custody determination," after which a

noncitizen may request review of that decision by an Immigration Judge. *See* 8 C.F.R. § 236.1(d)(1) (emphasis added). As such, the plain language of Section 1226(a) and its associated regulations require the provision of an individualized custody determination with respect to any noncitizen detained under the statute.

Section 1226(a)'s implementing regulations further specify the nature of the individualized inquiry that must be provided to the noncitizen. A DHS officer may grant a noncitizen bond or conditional parole pending a final decision in the noncitizen's removal proceedings "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). This regulation contemplates that the noncitizen will be provided an opportunity to be heard *before* detention, because it provides that the noncitizen "must demonstrate to the satisfaction of the officer" that release on bond or parole will not pose a public safety or flight risk. *Id.*; *see Kelly v. Almodovar*, No. 25-cv-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (finding a due process violation where ICE did not allow the petitioner "to make his case" before being detained (citing 8 C.F.R. §§ 1236.1(c)(8); 236.1(c)(8)). When a DHS/ICE officer decides to detain a noncitizen under Section 1226(a) after conducting an individualized inquiry into flight risk and danger, the noncitizen may appeal the custody determination to an Immigration Judge, who must conduct that inquiry anew. *See* 8 C.F.R. §§ 1003.19(a), (d), (e); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492–93 (S.D.N.Y. 2025) ("If DHS ultimately decides to detain a noncitizen after conducting such an assessment, that noncitizen may appeal said decision before an immigration judge, who must consider the same factors." (citing 8 C.F.R. §§ 1003.19(d), (e))). The noncitizen also has a right to appeal the Immigration Judge's decision to the Board of Immigration Appeals. *See* 8

C.F.R. § 1003.19(f) ("An appeal from the determination by an Immigration Judge may be taken to the Board of Immigration Appeals[.]").

Accordingly, in exercising discretionary authority to detain a noncitizen under Section 1226(a), ICE must conduct an individualized inquiry into whether the noncitizen presents a flight risk or danger to persons or property, provide the noncitizen an opportunity to be heard *before* it makes the custody determination, and afford an appeal of the initial custody determination to an immigration judge. *See, e.g.*, *Chipantiza-Sisalema v. Francis*, No. 25-cv-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (holding that "if ICE wishes to detain a noncitizen under the detention authority provided by 8 U.S.C. § 1226(a), ICE must allow the noncitizen" an opportunity to "'demonstrate to the satisfaction of the officer that release would not pose a danger to property or persons, and that the noncitizen is likely to appear for any future proceeding'" (brackets omitted) (quoting 8 C.F.R. §§ 1236.1(c)(8), 236.1(c)(8))); *Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *3 (E.D.N.Y. May 22, 2026) ("In practice, [Section 1226(a)] affords Petitioner 'an initial custody determination *before* exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk." (emphasis in original)); *Pastrana-Beltran v. Mullin*, No. 26-cv-2657, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) ("Distinct from mandatory detention under section 1225(b)(2)(A), section 1226(a) affords [the petitioner] an initial custody determination before exercising discretionary detention that entails an assessment of whether he can demonstrate that he is neither a danger to persons or property, nor a flight risk.").

Here, ICE did not make an individualized custody determination about Mr. Cedeno Carreno's risk of flight or danger to the public at any time before arresting him. Rather, ICE

officers identified Mr. Cedeno Carreno's vehicle on the morning of February 27, 2026, determined that he was in the United States without lawful status, procured an arrest warrant at 10:29 a.m., and arrested him at approximately 10:50 a.m. that same morning. (J. Rodriguez Decl. ¶ 4; Form I-200.) After the arrest, ICE officers transported Mr. Cedeno Carreno to an ICE intake center at the Nassau County Correctional Center where ICE officers processed and questioned him. But it was not until 2:52 p.m. that same day—about four hours *after* ICE officers arrested and detained Mr. Cedeno Carreno—that an ICE officer finally made an individualized custody determination, concluding that Mr. Cedeno posed a purported risk of flight due to purported lack of community and family ties to the area. (*See* J. Rodriguez Decl. ¶ 6; Notice of Custody Determination, J. Rodriguez Decl. Ex. 3, ECF No. 9-1.) Testimony by ICE Deportation Officer Jamie Rodriguez confirms this fact:

> Mr. Garzon: "Was there ever a custody determination assessment done by yourself prior to Mr. Carreno's arrest?"
>
> J. Rodriguez: "No."
>
> Mr. Garzon: And that custody determination that was filed with this record, that was done many hours after his detention or his arrest, is that correct?"
>
> J. Rodriguez: A few hours, yes."

(Hr. Tr 16:5–11.)

As a result, Mr. Cedeno Carreno's arrest and detention on the morning of February 27, 2026, without even a contemporaneous custody determination violated his rights to procedural due process under the Fifth Amendment to the United States Constitution and was unlawful from its inception. *See Quille*, 2026 WL 1453889, at *4 (holding that ICE's arrest of a noncitizen prior to conducting an individualized custody determination is a due process violation ); *Pastrana-Beltran*, 2026 WL 1398609, at *2 (holding that ICE's denial of "a custody *determination before*

*or contemporaneous with* [petitioner's] arrest . . . itself was a violation of his due process rights" (emphasis added)).

* * *

Accordingly, all of the *Mathews v. Eldridge* factors weigh in favor of the conclusion that Mr. Cedeno Carreno suffered a due process violation. Mr. Cedeno Carreno has a significant interest in his personal liberty, but ICE's procedures, which involve detention under Section 1226(a) *before* any act initiating removal proceedings and without affording him any notice or opportunity to be heard on the issues of flight risk and dangerousness, create a grave risk of erroneous deprivation of liberty. Moreover, Respondents fail to show that these procedures advanced any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings because Mr. Cedeno Carreno has absolutely no criminal history whatsoever, has lived in the interior of the United States for more than two years, and was not even facing pending removal proceedings at the time that ICE arrested and detained him. ICE Officer B. Rodriguez's post-hoc rationalization that Mr. Cedno Carreno posed a flight risk because of a lack of community and family ties is insufficient because it took place more than four hours after Mr. Cedeno Carreno's arrest. (J. Rodriguez Decl. ¶ 6.) Thus, Respondents' detention of Mr. Cedeno Carreno was unlawful from its inception and carried out in violation of his Fifth Amendment rights to procedural due process.

* * *

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). In this action, "dispos[ing] of the matter as law and justice

require," 28 U.S.C. § 2243, necessitates the immediate release of Mr. Cedeno Carreno from ICE custody.

**CONCLUSION**

Accordingly, for all of these reasons explained in this Memorandum and Order, the Petition is GRANTED in part. As reflected in the Court's Order dated March 3, 2026, Respondents were ordered to immediately release Mr. Cedeno Carreno from custody with all of his belongings in Respondents' possession, including but not limited to all identification cards, clothing, and money. (Elec. Order, Mar. 3, 2026.) Respondents released Mr. Cedeno Carreno immediately following the hearing on March 3, 2026, with all of his identification documents and belongings. (Hr'g Tr. at 51:20–52:9.) Accordingly, any remaining claims in the Petition are dismissed, and this case is closed.

Dated: Central Islip, New York
October 2, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge